777 A.2d 413

In the Matter of William James **PERRONE**.

**Petition for Reinstatement.**

Supreme Court of Pennsylvania.

Argued Jan. 30, 2001.

Decided July 17, 2001.

564

Harold E. Ciampoli, Audubon, for Office of Disciplinary Conduct.

James C. Schwartman, Philadelphia, for William J. Perrone.

Before JOHN P. FLAHERTY, Chief Judge, ZAPPALA, CAPPY, CASTILLE, NIGRO, and SAYLOR, JJ.

### OPINION

NIGRO, JUSTICE:

This case involves Petitioner William Perrone's petition to be reinstated following his disbarment from the practice of law in Pennsylvania. On July 27, 1993, Perrone pleaded guilty to

theft by deception, tampering with public records or information, securing execution of documents by deception and unsworn falsification to authorities. The criminal charges stemmed from Perrone's filing of false and misleading fee petitions which requested payment for legal services purportedly provided to indigent defendants in the City of Philadelphia ("City") Perrone was sentenced to five years probation for the theft by deception and tampering with public records convictions, and two years probation on the other charges, to run concurrently. Perrone was also ordered to pay $130,000.00 in restitution, which was promptly paid in full. On November 30, 1995, this Court entered an order disbarring Perrone from the practice of law retroactive to September 1, 1993. Perrone now petitions this Court for reinstatement pursuant to Rule 218(c)(6) of the Pennsylvania Rules of Disciplinary Enforcement ("Pa.R.D.E.").[1] For the reasons that follow, we deny the petition for reinstatement.

Perrone filed the instant petition for reinstatement on December 9, 1997. A hearing on the petition was held before a hearing committee on October 15, 1998. Following the hearing, the committee filed a report recommending that the petition for reinstatement be granted. The Office of Disciplinary Counsel filed a brief on exceptions to the recommendation, and the matter was adjudicated by the Disciplinary Board at a meeting on August 18, 1999. In a subsequent report, the Disciplinary Board recommended that Perrone's petition for reinstatement be granted.[2]

On April 18, 2000, this Court issued a rule to show cause why an order denying Perrone's petition for reinstatement

---

**1.** 1. Pa.R.D.E. 218(c)(6) provides:

In the event the Board recommends reinstatement and the Supreme Court, after consideration of that recommendation, is of the view that a rule to show cause should be served upon the respondent-attorney why an order denying reinstatement should not be entered, the same shall be issued setting forth the areas of the Court's concern.

**2.** Board Member, now Chair, Angelo Scaricamazza filed a dissenting opinion in which then-Board Chair William Caroselli joined.

should not be entered based on his failure to meet the threshold standard articulated in *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872 (1986), as well as his failure to demonstrate by clear and convincing evidence that his present resumption of the practice of law would not have a detrimental effect upon either the integrity and standing of the bar, the administration of justice, or the public interest, and that he has the moral qualifications, competency and learning in the law required for admission to practice law in the Commonwealth, as is required by Pa.R.D.E. 218(c)(3)(i). Following our receipt of Perrone's response to the rule to show cause, this Court issued an order granting oral argument in this matter, which was heard on January 30, 2001.

The primary purpose of our lawyer disciplinary system is to protect the public from unfit attorneys and to maintain the integrity of the legal system. *See Keller*, 506 A.2d at 875. Although a disbarred attorney may petition for reinstatement five years after disbarment, reinstatement is not automatic or guaranteed. *See id.* When a disbarred attorney seeks reinstatement, the threshhold question must be whether the petitioner has shown that his breach of trust was not so egregious as to preclude this Court from even considering his petition for reinstatement.[3] *See In the Matter of Greenberg*, 561 Pa. 154, 155, 749 A.2d 434, 435 (Pa.2000); *In the Matter of Costigan*, 541 Pa. 459, 463, 664 A.2d 518, 520 (1995); *Keller*, 506 A.2d at 875.

---

**3.** This threshold inquiry is somewhat coextensive with this Court's duty to determine whether Perrone has met his burden under Pa.R.D.E. 218(c)(3)(i) of proving by clear and convincing evidence that his current resumption of the practice of law would not have a detrimental impact on the integrity and standing of the bar, the administration of justice, or the public interest. The threshold inquiry articu'...ed in *Keller* and later clarified in *In the Matter of Costigan*, 541 Pa. 4.9, 465, 664 A.2d 518, 520 (1995), merely recognizes the fact that some forms of misconduct are so egregious that they will forever bar the disbarred attorney from successfully seeking reinstatement.

The misconduct in this matter arose from Perrone's filing of false and misleading fee petitions with the City. From 1990 to 1992, Perrone submitted 254 fee petitions requesting payment for legal services provided to indigent defendants in Philadelphia. The fee petitions contained itemized statements of time expended, services rendered and expenses allegedly incurred by Perrone in performing legal services. Each fee petition also contained Perrone's notarized affidavit that the facts averred in the petition were true. After the Deputy Court Administrator and trial court judge reviewed each fee petition, Perrone was issued checks by the City. From 1990 to 1992, Perrone received checks totaling $345,755.12 from the City.

Perrone's misconduct continued for three years until it was discovered as a result of an investigation conducted by a reporter for the Philadelphia Inquirer. A review of Perrone's fee petitions, as a whole, revealed that he actually billed for more than 40 hours a day for three separate days, 24 hours per day on 85 separate days, and more than 18 hours per day on 140 days. This billing meant that Perrone would had to have worked 11.5 hours per day, seven days a week, 365 days a year from 1990 through 1992. Perrone's methods of defrauding the City included filing fee petitions and receiving compensation for representing defendants in non-existent cases, representing defendants when official court records showed that he was not present in court on the dates and times listed in the fee petition, researching and writing petitions for allowance of appeal to the Supreme Court when he submitted the identical brief submitted to the Superior Court, and drafting petitions in such a way that it appeared that he represented a defendant on more than one matter when, in fact, he provided legal representation for handling a single matter.

Viewing Perrone's misconduct in light of this Court's previous holdings concerning reinstatement petitions, we cannot say that Perrone's misconduct was so deplorable that he can

never be reinstated to the bar. *See In the Matter of Verlin*, 557 Pa. 47, 731 A.2d 600 (1999) (attorney's misconduct in assisting personal injury client in impersonating dead man at deposition was not so egregious that it precluded consideration of petition for reinstatement); *Costigan*, 664 A.2d at 518 (attorney's participation in an unorthodox distribution of estate assets involving concealment of assets from the rightful heir was not so egregious that it precluded consideration of petition for reinstatement). Having come to this conclusion, we must now determine whether Perrone has met his burden of proving by clear and convincing evidence that his current resumption of the practice of law would not have a detrimental impact on the integrity and standing of the bar, the administration of justice, or the public interest, and that he has the moral qualifications, competency and learning in the law required for admission to practice law in this Commonwealth. *See* Pa.R.D.E. 218(c)(3)(i). In order to make this determination, we must consider the amount of time that has passed since Perrone was disbarred, as well as his efforts at rehabilitation. *See Verlin*, 731 A.2d at 602.

In the instant case, Perrone has been removed from the practice of law since September 1, 1993. Since his disbarment, Perrone has completed his probationary period, paid his court ordered restitution, volunteered for charitable organizations and spent time with his family. Perrone also worked as a record keeper for a restaurant supply company and as a paralegal, where he had the opportunity to review advance sheets and other legal publications. In addition, Perrone kept up with his legal education by attending CLE courses, completing 42 hours of course work in the year preceding his filing for reinstatement. At his reinstatement hearing, eight character witnesses, including Perrone's employers, community members and attorneys, testified in support of Perrone's reinstatement. Perrone also submitted twenty-four "character reference" letters supporting his petition for reinstate-

ment. In addition, Perrone testified that he recognized his wrongdoing and admitted that he is solely to blame for his misconduct. Although this evidence suggests that Perrone is working towards rehabilitation, we do not believe that a sufficient amount of time has passed to dissipate the detrimental impact of his misconduct on the public trust. Nor do we believe that he has performed an acceptable amount of community service given the type of misconduct involved here, i.e., the misappropriation of public funds earmarked for indigent representation.

Perrone's misconduct was both deliberate and committed solely for his own personal profit. Not only did Perrone knowingly and intentionally engineer a systematic scheme to defraud the City, he did so in his capacity as a court-appointed public defender. As noted by the dissent to the Disciplinary Board's recommendation, Perrone misappropriated public funds that were specifically intended to be used to provide representation for indigent individuals. The dissent explained that

The major portion of the budget of the Court of Common Pleas of Philadelphia County is allocated to provide for legal services to those that are unable to afford services of a private attorney. [Perrone], by filing these fraudulent fee petitions, in essence, was taking funds from those individuals that our system has a duty to protect. The individuals are those that could least afford the services of a private attorney and must turn to the Courts to appoint representation for them. The misappropriation and theft was incurred by the fee petitions submitted by [Perrone] that potentially deprived an indigent person from representation.

Dissent, 959 D.D. 2 at 1–2, filed February 24, 2000.

Moreover, Perrone's misconduct continued for three years until it was discovered by the Philadelphia Inquirer reporter. In Perrone's initial disciplinary proceeding, the Disciplinary Board found that Perrone "has not shown appreciable contrition or sorrow for his conduct, and it is the opinion of this Board that [Perrone] would not have come forward on his own to report his conduct had he not been directly and indisput-

ably confronted with it." 74 D.B. 93, at 13–14, filed October 18, 1995.

Our decision to deny the petition for reinstatement also rests on the fact that Perrone's misconduct involved false swearing. When Perrone submitted the false fee petitions, he did so with notarized affidavits stating that the facts averred in the petitions were true. This Court has consistently held that this type of misconduct is a particularly egregious species of dishonesty that goes to the heart of the legal profession. *See Office of Disciplinary Counsel v. Grigsby*, 493 Pa. 194, 200, 425 A.2d 730, 733 (1981). In *Greenberg,* we recently reiterated how deplorable such conduct is when we stated:

> Deliberate misrepresentations in court filings by an attorney are a greivously serious matter. Attorneys, as officers of the court, who intentionally file false statements in court proceedings implicate the very core of the legal system. Ours is a profession that can only function effectively as long as attorneys abide by their ethical requirements. By repeatedly filing false information to a court of law, petitioner has seriously damaged both the legal profession and the public trust. It is difficult to imagine a circumstance that more closely implicates one's fitness to practice law.

*Greenberg,* 749 A.2d at 436–437 (Citations omitted). Similarly, in the instant case, Perrone's misconduct in misappropriating public funds earmarked for indigent representation for his own personal enrichment goes to the core of the legal system and seriously implicates his fitness to practice law.

In light of these circumstances, it is clear that Perrone's dishonest actions have gravely damaged both the legal profession and the public trust in the legal system. Given the severity of Perrone's misdeeds, allowing him to be reinstated after less than eight years of disbarment would only reinforce the public's perception that lawyers are greedy and deceitful. *See id.* at 437. Therefore, as we believe that allowing Perrone to resume the practice of law at the present time would have a detrimental effect upon the integrity and standing of the bar and on the administration of justice and would subvert the

public interest, the petition for reinstatement is denied.[4] *See id.* at 436; *Costigan,* 664 A.2d at 522–523.

Madame Justice Newman did not participate in the consideration or decision of this case.

**4.** Pursuant to Rule 218(e), Pa.R.D.E., Perrone is directed to pay the expenses incurred by the Board in the investigation and processing of the petition for reinstatement.