## In the Matter of Valentino

Disciplinary Board Docket no. 26 D.B. 1997.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SAIDIS, *Member,* April 27, 2004—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Petitioner, Philip A. Valentino Jr., filed a petition for reinstatement to the bar of Pennsylvania on September 17, 2002. By opinion of the Supreme Court of Pennsylvania decided May 20, 1999, petitioner was suspended

from the practice of law for a period of five years retroactive to February 24, 1997.

A reinstatement hearing was held on April 22, 2003, before Hearing Committee 1.01 comprised of Chair Alice Beck Dubow, Esquire, and Members Stewart L. Cohen, Esquire, and Leon W. Tucker, Esquire. Petitioner was represented by James C. Schwartzman, Esquire. Petitioner offered his own testimony and nine witnesses. The reinstatement petition was made part of the record.

Following the submission of briefs by the parties, the Hearing Committee filed a report on January 12, 2004, and recommended that the petition for reinstatement be denied.

On February 2, 2004, petitioner filed a brief on exceptions and a request for oral argument before a three-member panel of the Disciplinary Board.

On February 19, 2004, Office of Disciplinary Counsel filed a brief opposing exceptions.

On February 25, 2004, petitioner withdrew his request for oral argument.

This matter was adjudicated by the Disciplinary Board at the meeting of March 10, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner is Philip A. Valentino Jr. He was born in 1957 and was admitted to the practice of law in Pennsylvania in 1983. His current address is 1064 Temperance Lane, Richboro, PA 18954.

(2) Petitioner was suspended from the practice of law for five years, retroactive to February 24, 1997, by opin-

ion of the Supreme Court of Pennsylvania entered May 20, 1999.

(3) Between 1987 and 1996, petitioner engaged in several instances of fraud by submitting medical records, in several arbitration matters, that petitioner knew to be fraudulent. The medical records showed treatment on dates when no treatment had occurred. The petitioner settled the cases with the insurance carriers who made settlement payments to the petitioner.

(4) Of the five client matters, three clients had not sought immediate medical treatment and the fraudulent medical records were intended to make it appear that treatment had been sought promptly after the accident.

(5) These three instances were cases which petitioner voluntarily made known to the United States Attorney's office.

(6) The fourth case involved the petitioner's mother who was the plaintiff in a personal injury action for slip and fall. Mrs. Valentino was a client whose medical bills were fraudulently submitted.

(7) A fifth case, which formed the basis of petitioner's conviction, involved a personal injury action by his wife where she recovered a settlement check in the amount of $3,000.

(8) In 1996, petitioner's mother was subpoenaed to testify about her medical care that was the subject of the fraudulent documents.

(9) Petitioner, acting as his mother's attorney, advised his mother to give false testimony to the grand jury, and she did so.

(10) Realizing the seriousness of the situation, petitioner immediately contacted his own attorney and had

the incorrect testimony corrected. To protect his mother from a perjury prosecution, petitioner admitted his involvement in the scheme and volunteered information about other cases in which plaintiff submitted false medical bills.

(11) In November 1996, petitioner entered a plea of guilty to one count of mail fraud.

(12) Petitioner was sentenced to three years of probation, with the first 12 months on home confinement, and was ordered to pay restitution in the amount of $21,800 and a fine of $5,000. At the time of sentencing, Judge Robert Kelly of the United States District Court for the Eastern District of Pennsylvania, ordered a downward departure from the sentencing guidelines. Judge Kelly also noted that petitioner's subordination of perjury was a panic reaction, which was corrected.

(13) Petitioner filed a joint petition with the Office of Disciplinary Counsel requesting that he be placed on temporary suspension on January 20, 1997.

(14) By order dated May 20, 1999, the Supreme Court imposed a five-year suspension on petitioner, retroactive to February 24, 1997. In its opinion the court stated: "We reach this conclusion based on the fact that respondent retained the moral sense to immediately perceive his serious wrongdoing and bring his malfeasance to the attention of the court. He not only cooperated with the authorities, but also volunteered information regarding additional impropriety. This in no way excuses respondent's serious disciplinary violations but it demonstrates that he recognizes the grievous nature of his conduct and accepts responsibility for his actions. Moreover, we note that respondent has no prior disciplinary history and presented substantial evidence of good character."

(15) Petitioner paid his restitution in full and served his probation without incident.

(16) During the period of his suspension, petitioner managed and performed with his band, The Exceptions, who play on average of two to three times per week in the winter and four or five times per week during the summer.

(17) The band played approximately 12 to 15 charitable events each year during petitioner's suspension, including events for the Variety Club, Children's Miracle Network, Crime Night Out in Sea Isle City, NJ, Crime Night Out in Philadelphia and Camden, NJ, and Children's Hospital of Philadelphia.

(18) At each of these charitable events, the band waived its nightly fee of $5,000 to $10,000.

(19) Petitioner did not practice law or hold himself out as an attorney during the period of his suspension.

(20) Petitioner has demonstrated sincere remorse for his misconduct. He has recognized his wrongdoing and accepted full responsibility.

(21) Petitioner has learned from his experience and understands what it means to let down his family, friends and colleagues in the law and he is determined not to repeat his mistakes.

(22) Petitioner has maintained the requisite legal knowledge for reinstatement by attending the required number of continuing legal education courses mandated for reinstatement and by reading various legal journals, such as the *Legal Intelligencer.*

(23) If reinstated, petitioner intends to practice entertainment law with some areas of a general practice, such as real estate and civil litigation.

(24) Nine character witnesses testified on petitioner's behalf. These witnesses testified that petitioner had a very good reputation for being a truthful, honest and law-abiding person and his misconduct was an aberration.

## III. CONCLUSIONS OF LAW

(1) Petitioner has the moral qualifications, competency and learning in the law required to practice law in Pennsylvania.

(2) Petitioner's resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice, nor subversive of the public interest.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for reinstatement filed by Philip A. Valentino Jr. By opinion of the Supreme Court of Pennsylvania decided May 20, 1999, petitioner was suspended from the practice of law for a period of five years retroactive to February 24, 1997.

Pursuant to Rule 218(a), Pa.R.D.E., an attorney who is suspended for a period exceeding one year may not resume the practice of law until reinstated by the Supreme Court of Pennsylvania. In order for petitioner to gain reinstatement, he has the burden of proving by clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law required for admission to practice law in this Commonwealth. In addition, petitioner has the burden of demonstrating that his resumption of the practice of law will not be detrimental to the integrity and standing of the

bar or administration of justice, nor subversive of the public interest. Rule 218(c)(3)(i), Pa.R.D.E.

A reinstatement proceeding is a searching inquiry into a lawyer's present professional and moral fitness to resume the practice of law. The object of concern is not solely the transgressions which gave rise to the lawyer's suspension, but rather the nature and extent of the rehabilitative efforts the lawyer has made since the time the sanction was imposed, and the degree of success achieved in the rehabilitative process. *Philadelphia Newspapers Inc. v. Disciplinary Board of the Supreme Court,* 468 Pa. 382, 363 A.2d 779 (1976).

Petitioner was convicted of one count of mail fraud arising from his participation in several instances of submitting false and fraudulent medical bills and reports to insurance companies. Petitioner was placed on probation for three years and ordered to make restitution of $21,800 and pay a fine of $5,000. Petitioner completed his probation and paid the restitution and fine in full.

During his suspension, petitioner was the manager of a band called The Exceptions. He was also a performer in this group. Petitioner has been a member of the band for 26 years and has managed it for approximately 24 years. He is the sole proprietor of the band. Subsequent to his suspension, respondent transformed his law office into an entertainment center called Valentino Entertainment in Bensalem, Pennsylvania. This center handles the booking of numerous bands, holds rehearsals, and does auditions for private events.

During the period of petitioner's suspension, his band played at least 12 to 15 charitable events per year and waived its nightly fee of $5,000 to $10,000 to support

the charity. Some of the charities included Children's Miracle Network and Children's Hospital of Philadelphia, as well as Crime Night Out in Philadelphia and Camden. Despite this evidence, the Hearing Committee determined that petitioner did not engage in meaningful community service during his suspension. The record supports a finding that petitioner did engage in meaningful community service. The record is clear that petitioner's band performed at 12 to 15 charitable events per year, for such worthy causes as those listed above. While the Supreme Court has emphasized the need for meaningful community service as a means of rehabilitation, there are no strict guidelines as to what actions a petitioner must engage in to constitute such meaningful service. *In the Matter of Perrone,* 565 Pa. 563, 777 A.2d 413 (2001). Certainly petitioner's donation of time and money via his band to worthy causes 12 to 15 times per year qualifies as meaningful community service.

The Hearing Committee also found that petitioner did not understand the harm his misconduct caused to other people and the judicial system, and did not show sufficient remorse. The record does not support this finding. Petitioner admitted that his actions were wrong and he made assurances to the committee that those actions would not be repeated. Petitioner expressed embarrassment and humiliation for his actions, and recognition that he lost the trust and confidence of community members by his actions. Petitioner expressed remorse at his disciplinary hearing in 1997. With regard to the original imposition of discipline, the Supreme Court of Pennsylvania acknowledged in the opinion of May 20, 1999, that petitioner demonstrated recognition of his wrongdoing and accepted responsibility for it by cooperating with

the authorities, volunteering information regarding additional impropriety, and immediately bringing to the attention of the court his subornation of perjury. Petitioner has presented persuasive evidence that he continues to be remorseful today.

It should be noted that the petitioner was not disbarred, but received a five-year suspension.

Nine character witnesses testified as to petitioner's good reputation for honesty and integrity. These witnesses believed petitioner's misconduct to be an aberration such that his re-admission to the bar would not be detrimental.

Petitioner has presented conclusive evidence that he has rehabilitated himself. Petitioner has met with clear and convincing evidence his burden of proving that he is morally qualified, competent and learned in the law. Furthermore, petitioner has demonstrated that his re-admission will not be detrimental to the bar or the public. For these reasons the board recommends that the petition for reinstatement be granted.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that petitioner, Philip A. Valentino Jr., be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Member Raspanti recused in this matter and Board Member Brown did not participate in the March 10, 2004 adjudication.

562

## ORDER

And now, July 29, 2004, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated April 27, 2004, the petition for reinstatement is granted.

Pursuant to Rule 208(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Saylor dissents.