**In the Matter of Obringer**

Disciplinary Board Docket no. 160 D.B. 1997.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

WRIGHT JR., *Member,* March 24, 2005—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

On February 26, 2004, petitioner, Robert H. Obringer, filed a petition for reinstatement to the bar of the Supreme Court of Pennsylvania. Petitioner was disbarred by order of the Supreme Court of Pennsylvania dated May 5, 1998. Office of Disciplinary Counsel filed a response to petition for reinstatement on May 6, 2004, stating its concerns regarding petitioner's ability to demonstrate that he engaged in a period of quantitative and qualitative rehabilitation.

A reinstatement hearing was held on September 10, 2004, before Hearing Committee 1.05 comprised of Chair Dennis T. Kelley, Esquire, and Members Thomas A. Brophy, Esquire, and Jayne A. Piarulli, Esquire. Petitioner was represented by Charles J. Cunningham III, Esquire. Petitioner testified on his own behalf and offered the testimony of three character witnesses. He produced letters from character witnesses.

On November 16, 2004, the Hearing Committee filed a report and recommended that the petition for reinstatement be granted.

This matter was adjudicated by the Disciplinary Board at the meeting of January 19, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner is Robert H. Obringer. He was born in 1947 and was admitted to the practice of law in Pennsylvania in 1983. He currently resides at 244 S. Barrett Avenue, Audubon, NJ 08106.

(2) Petitioner was disbarred by order of the Supreme Court of Pennsylvania dated May 5, 1998, which disbarment took effect immediately.

(3) Petitioner's disbarment was reciprocal discipline imposed under Rule 216 of the Pennsylvania Rules of Disciplinary Enforcement. Petitioner was disbarred in New Jersey by order dated August 13, 1997.

(4) Petitioner's disbarment in New Jersey was based on his plea of guilty to one count of mail fraud in violation of 18 U.S.C. §1341.

(5) Petitioner was sentenced on September 19, 1997, by Judge John Bissell of the United States District Court, District of New Jersey. He was sentenced to four years of probation, 400 hours of community service, six months of home confinement, a fine of $3,000 and a special assessment of $100.

(6) On July 12, 2000, petitioner was granted early termination of probation. He completed his community service and paid all of his fines.

(7) The facts that led to petitioner's criminal conviction are as follows:

(a) He was appointed by the Department of Justice to act as a bankruptcy trustee in the Chapter 11 case filed by Gaskill Construction Company. That Chapter 11 case was converted to a Chapter 7. Petitioner was entrusted with overseeing a bankruptcy estate of between $150,000 and $200,000.

(b) From the bankruptcy estate, petitioner paid taxes, professional fees, and creditors, as well as other expenses related to the bankruptcy. Two of the checks petitioner

sent, totaling $20,000, were never cashed and were not returned.

(c) The U.S. trustee requested that the bankruptcy case be closed. Petitioner requested permission of the court to deposit $20,000 into the registry of the court as unclaimed funds. That money eventually would go to the federal government, if the creditors did not come forward. Petitioner was discharged as the trustee and the case was closed.

(d) Approximately two months after the bankruptcy was closed, petitioner devised a scheme to take the $20,000. He obtained a post office box and opened a bank account under a fictitious name. He wrote a letter on fake letterhead to the registry of the court claiming to be the entitled party and requesting release of the funds. The clerk of court sent him a check for $20,000.

(e) Petitioner paid $10,000 to the IRS, $5,000 for an American Express bill, and the rest for other credit card charges.

(8) Petitioner explained his criminal misconduct as motivated by greed and desperation.

(9) While petitioner was in the hospital recovering from cancer surgery, someone at his law firm discovered the cancelled checks drawn on the account for the fictitious firm. Petitioner's partners confronted him and asked for an explanation.

(10) Petitioner told his partners he had done nothing criminal. He told them he was hiding money from his wife, from whom he had separated four months earlier. The partners were satisfied with this explanation.

(11) The next day petitioner called one of the partners and told him the truth about what he had done.

(12) The partners did an early distribution of partnership money in order to provide petitioner with sufficient funds to make restitution, which petitioner did.

(13) Petitioner and his partners sent a letter to the New Jersey Ethics Committee describing petitioner's misconduct.

(14) Petitioner confessed his actions to the U.S. trustee.

(15) Petitioner went to the bankruptcy judges before whom he regularly appeared and told them of his misconduct, and petitioner did the same with several other people.

(16) Petitioner at all times cooperated with the authorities.

(17) While on probation, petitioner worked at P.R.S. International in Blue Bell, Pennsylvania, a company that does auditing of accounts. After six months, petitioner went to work as a project manager for Source One Management, counseling customers in areas of purchasing and financial controls.

(18) Petitioner currently is employed as director of bankruptcy and litigation services for Phillips and Cohen, which is a mid-sized collection agency with offices in New Jersey, Delaware and Florida.

(19) If reinstated, petitioner would like to work for a small law firm or a public interest law group.

(20) Petitioner teaches adult education courses for the University of Phoenix and Rosemont College, which are both located in Philadelphia. Petitioner teaches General

Introduction to Studies, Religion, and Comparative Religions. Both institutions are aware that petitioner is a disbarred lawyer. If his license is reinstated, he is eligible to teach some law-related courses.

(21) Petitioner has been active with community organizations prior to and during his disbarment. He has been associated with the Lions Club since 1982.

(22) Petitioner was elected to the board of Camden Optometric, a United Way-funded agency in Camden, New Jersey, which provides vision care to the underprivileged. Even after petitioner was convicted and disbarred, he was still re-elected to this board, where he served from 1986 through 2002.

(23) Petitioner helped to found the Bankruptcy Trustees Association in South Jersey and held offices in that organization.

(24) Petitioner, along with several other lawyers, worked to set up the Bankruptcy Clinic at Rutgers Law School. The clinic supervises and monitors law students who counsel people considering bankruptcy or involved in bankruptcy proceedings.

(25) Petitioner fulfilled his Continuing Legal Education credits for reinstatement to the bar.

(26) Petitioner expressed sincere remorse for his misconduct.

(27) Three character witnesses testified on behalf of petitioner. These witnesses are credible.

(28) Barry Sharer is a C.P.A. and has known petitioner since 1984. Mr. Sharer did business with petitioner's former law firm. Mr. Sharer opined that petitioner en-

joys an excellent reputation in the community for honesty and trustworthiness.

(29) Morton Batt acts as a bankruptcy trustee, a state court receiver and a fiscal agent. He has known petitioner for 20 years. Mr. Batt has used petitioner as his attorney. He opined that petitioner has a good reputation in the community as an honest person. If petitioner is reinstated, Mr. Batt would hire him as his attorney.

(30) Joseph McCormick is an attorney who practices in Haddonfield, New Jersey. He has known petitioner since 1981. Mr. McCormick is an officer in the Camden County Bar Association and has sat on an ethics committee in New Jersey, similar in nature to a Hearing Committee in the Pennsylvania disciplinary system. Mr. McCormick opined that petitioner's reputation in the community is excellent for truthfulness and honesty. Mr. McCormick would trust petitioner to represent him and his family in financial matters.

(31) Character testimony in the form of letters was moved into evidence by petitioner. These letters included one from Donald Levenson, a former partner of petitioner's, who stated his opinion that petitioner has an excellent reputation as an honest and trustworthy person.

### III. CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of his petition for reinstatement.

(2) Petitioner has demonstrated by clear and convincing evidence that he possesses the moral qualifications,

competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner has demonstrated that his resumption of the practice of law within the Commonwealth will be neither detrimental to the integrity and standing of the bar or administration of justice, nor subversive of the public interest.

## IV. DISCUSSION

This matter comes before the Disciplinary Board on a petition for reinstatement filed by Robert H. Obringer. Petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania dated May 5, 1998. Petitioner bears the burden of proof by clear and convincing evidence that he is qualified for re-admission. Pa.R.D.E. 218(c)(3)(i).

Petitioner's request for reinstatement following disbarment is initially governed by the standard set forth by the Supreme Court in *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). As a threshold matter, the board must determine whether petitioner has demonstrated that his breach of trust was not so egregious that it precludes him from reinstatement.

Petitioner pleaded guilty to one count of mail fraud. In his capacity as a bankruptcy trustee, petitioner deposited unclaimed money with the court and then submitted a false claim in order to withdraw the money, which totaled $20,000. In order to effectuate this scheme, petitioner opened a bank account under a fictitious name and wrote a letter on fake letterhead to the registry of the court claiming to be the party entitled to the money. In

reliance on this letter, the clerk of court released the funds to petitioner, who used these funds to pay IRS debts and credit cards. Petitioner's actions constituted a single instance of misconduct. No pattern of deception was discovered in any of petitioner's prior cases.

While certainly serious in nature, this misconduct is not so egregious as to preclude consideration of petitioner's request for reinstatement. *In the Matter of Perrone,* 565 Pa. 563, 777 A.2d 413 (2001) (Attorney Perrone's conviction of theft by deception, tampering with public records, securing execution of documents by deception, and unsworn falsification to authorities was not egregious enough to prohibit consideration of the reinstatement petition); *In re Verlin,* 557 Pa. 47, 731 A.2d 600 (1999) (Attorney Verlin's conviction of criminal conspiracy, perjury, false swearing, and theft by deception was not egregious enough to prohibit consideration of the reinstatement petition).

Having concluded that petitioner's misconduct is not so egregious as to preclude reinstatement, the board must now determine whether petitioner has met his burden of proving by clear and convincing evidence that his resumption of the practice of law at this time would not have a detrimental impact on the integrity and standing of the bar, the administration of justice, or the public interest, and that he has the moral qualifications, competency and learning in the law required for admission to practice law in Pennsylvania. Pa.R.D.E. 218 (c)(3)(i). In order to make this determination, the board must consider the amount of time that has passed since petitioner was disbarred, as well

as his efforts at rehabilitation. *In re Verlin,* 557 Pa. 47, 731 A.2d 600 (1999).

Petitioner has been without a license to practice law for approximately seven years. Evaluation of petitioner's disbarment period suggests that it was a time of successful qualitative rehabilitation, sufficient to dissipate the taint of his misconduct. During that time he served his criminal sentence of home confinement and probation, which was terminated early. He completed his community service and paid his fines and costs in full. He made full restitution of the $20,000. Petitioner has worked continuously, utilizing his financial background in a variety of employment situations. Currently he is the director of bankruptcy and litigation services for Phillips and Cohen, a collection agency with offices in three states. He supervises at least 20 people in this capacity. Petitioner also teaches adult education courses for the University of Phoenix and Rosemont College.

Petitioner remained active in community organizations during his disbarment. He is active in the Lions Club and was re-elected to the board of Camden Optometric several times, with the full knowledge of the board that he was a felon and a disbarred lawyer. He was instrumental in helping to establish a bankruptcy clinic at Rutgers Law School.

Petitioner maintained and expanded his legal knowledge during his disbarment. He kept current on bankruptcy related material and read several legal journals, as well as attended Continuing Legal Education courses. If reinstated, petitioner hopes to work for a small law

firm or a public interest law group. Petitioner feels his personal experience will make him a better lawyer.

Petitioner expressed sincere remorse for his misconduct. Three witnesses, in addition to petitioner's statements, helped to establish that his misconduct was an aberration and that he would be an asset to the legal community if reinstated. These witnesses believe petitioner's reputation to be very good in the community, and they have no reservations about petitioner's resumption of the practice of law.

Considering all of the above facts, the board is persuaded that petitioner has engaged in a qualitative period of rehabilitation during his disbarment. Petitioner has met his burden of proving that he has the moral qualifications, learning in the law and competency to practice law, and his resumption of the practice of law will not have a detrimental impact on the integrity and standing of the bar, the administration of justice or the public interest.

The board recommends that the petition for reinstatement be granted.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that petitioner, Robert H. Obringer, be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Members Gentile, Pietragallo and Nordenberg did not participate in the January 19, 2005 adjudication.

## ORDER

And now, June 24, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated March 24, 2005, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.