PER CURIAM,
Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, The Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above captioned petition for reinstatement.
I. HISTORY OF PROCEEDINGS
By order of November 30, 2006, the Supreme Court of Pennsylvania disbarred Robert Eric Hall on consent based on his conviction of homicide by vehicle/DUI and related offenses. Mr. Hall filed a petition for reinstatement on October 30, 2013. Office of Disciplinary Counsel filed a response on April 11, 2014.
*355 A reinstatement hearing was held on July 9 and September 5, 2014, before a District II Hearing Committee comprised of Chair Daniel J. Rovner, Esquire and Members Timothy R Brennan, Esquire and Patrick J. Murphy, Esquire. Petitioner was represented by Samuel C. Stretton, Esquire. Petitioner testified on his own behalf and presented the testimony of twelve witnesses.
Following the submission of a brief by petitioner, the hearing committee filed a report on January 6, 2015 and recommended that the petition for reinstatement be granted.
No briefs on exception were filed by the parties.
This matter was adjudicated by the disciplinary board at the meeting on January 15, 2015.
II. FINDINGS OF FACT
The board makes the following findings:
1. Petitioner is Robert Eric Hall. He was bom in 1959 and was admitted to practice law in Pennsylvania in 1984. His attorney registration address is 7052 Bell Gate Rd., Coopersburg, PA 18036. Petitioner is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.
2. Petitioner was disbarred on consent by order of the Supreme Court dated November 30, 2006, as a result of his criminal conviction for homicide by vehicle and related offenses.
3. Petitioner began his legal career working as an associate in the law firm of White and Williams in Philadelphia. He subsequently founded and became the managing partner of the Allentown office of that law firm *356 in 1989. Petitioner concentrated his practice in insurance defense work as a trial lawyer but subsequently began representing professional athletes in the area of sports law and founded that department within the law firm. (9/5/14 NT. 15-17)
4. Petitioner tried approximately 70 cases to jury verdict and hundreds of cases to arbitration. He also tried many non-jury, asbestos related cases in Philadelphia County. (9/5/14 N.T. 18)
5. Petitioner argued approximately 25-30 times in the Superior Court of Pennsylvania. (9/5/14 N.T. 19)
6. Petitioner opened his own law firm in 2001, which was called R.E. Hall & Associates and was located in Bethlehem, Pennsylvania. (9/5/14 N.T. 19-21)
7. Petitioner credibly testified about his alcohol problem. Petitioner did not drink in excess as a young man, but began drinking with more regularity at the time of his first divorce in 1992. (9/5/14 N.T. 22,23)
8. Petitioner’s drinking also increased when he began representing professional athletes. Petitioner noted that part of representing such athletes involved recruiting and getting to know them. For petitioner, this involved drinking alcohol as part of the recruiting process. Petitioner, as a result, became a problematic drinker by the year 2000. (9/5/14 N.T 24-27)
9. Petitioner had a driving under the influence arrest in the year 2002, which he resolved with A.R.D. disposition. (9/5/14 N.T. 31, 32)
10. Petitioner described the circumstances of the automobile accident, which resulted in his criminal *357 conviction. He indicated that on November 23, 2005, he was drinking at a bar in Allentown. Petitioner was driving a sports car, which he wanted to show off to a man he just met at the bar. (9/5/14 N.T. 38-40)
11. Petitioner was driving too fast while showing off his car when someone pulled out in front of him and he swerved to avoid hitting that car. He missed that car, but his car fishtailed and his tires spun out and he struck the car of a young man, a cadet at the United States Military Academy at West Point, who was driving in the other lane. The victim’s name was Anthony Severo and he died as a result of the accident. (9/5/14 NT. 41,42)
12. Petitioner entered a guilty plea to homicide by vehicle, a felony of the third degree; homicide by vehicle — DUI related, a felony of the second degree; driving under the influence, a misdemeanor of the second degree, second offense; recklessly endangering another person, a misdemeanor of the second degree; and, reckless driving, a summary offense. Petitioner’s total sentence was 6 to 12 years of incarceration.
13. Petitioner noted that, after reading comments of the victim’s parents in a newspaper, petitioner asked to revoke his bail and begin serving his jail sentence early because he realized he had to go to jail for what he did. This was against the advice of petitioner’s attorney. Petitioner felt this was the only thing he could do to take away some of the pain of the victim’s parents, and he did not want to set a bad example for his four children by failing to take responsibility. (9/5/14 NT. 45-47,194-198)
14. While incarcerated, petitioner was subjected to violence due to his status as a lawyer and the fact that he refused to do legal work for fellow inmates. (/5/14 NT. *358 61-66, 71,72)
15. Petitioner was released from prison on June 19, 2012, after serving six years of incarceration. He is currently on parole. (9/5/14 NT. 45-47, 194-198)
16. Petitioner was injured in the accident and his feet were fractured. Once he left the hospital on November 24, 2005, he entered inpatient alcohol rehabilitation at Caron Foundation until the end of December of 2005. (9/5/14 NT. 51,52)
17. After completing the Caron program, petitioner went to Livingrin in Allentown for three months, where he attended outpatient therapy three times per week and began the Twelve Step program. (9/5/14 N.T. 52-54)
18. During his incarceration, petitioner completed alcohol related programs that were provided at the institutions. (9/5/14 N.T. 55-57)
19. Following his release from incarceration, petitioner began attending Alcoholics Anonymous on a regular basis, and intends to continue his participation. (9/5/14 N.T. 74-79)
20. Petitioner’s last drink of alcohol was on November 23, 2005, the day of the accident. He has been sober since that time. (9/5/14 N.T. 47,48)
21. In July of 2012, petitioner obtained employment as a legal assistant at the law firm of Gross McGinley, LLP in Allentown. He works as an hourly employee approximately 40 hours per week. (9/5/14 N.T. 800
22. Both petitioner and the law firm notified the disciplinary board of his work as a legal assistant. (Pet. Exhibits 1-A and B; 9/5/14 N.T. 81, 82)
*359 23. Petitioner as a legal assistant has had no client contact. His employment entails researching and drafting pleadings. (9/5/14 N.T. 94, 95)
24. Petitioner has complied with Pennsylvania Rules of Disciplinary Enforcement 217(j) and all other requirements of a disbarred lawyer, while working as a legal assistant. (9/5/14 N.T. 94)
25. Petitioner has no driving privileges at this time due to his criminal conviction and rides to his job on his bike, which is approximately 13 to 14 miles each way. (9/5/14 N.T. 85)
26. Petitioner had a serious bike accident on September 28, 2012. He was hospitalized for bleeding on the brain and received numerous stitches. He went back to work as soon as he was able. (9/5/14 86-90, 91-93)
27. Petitioner has a passion for biking and he and his wife, a professional bicyclist, own a bike shop in the Allentown area. (9/5/14 N.T. 82,83)
28. Petitioner has taken all the requisite Continuing Legal Education courses for reinstatement. He also reads the Legal Intelligencer, the Lehigh Law Journal, and conducts research on West Law to maintain his currency in the law. (9/5/14 N.T. 96, 97)
29. Since petitioner’s release from prison, he has volunteered with organizations in Bucks County and Lehigh County involved with alcohol rehabilitation. He works with the Lehigh County Probation Department assisting with repeat DUI offenders. He speaks regularly at forums on behalf of Mothers Against Drunk Driving (“MADD”). He has given presentations at area community colleges and high schools. (9/5/14 N.T. 98-102)
*360 30. Petitioner intends to continue his volunteer efforts for as long as he is able. (9/5/14 N.T. 103, 104)
31. If reinstated, petitioner would like to work with Lawyers Concerned for Lawyers to help other lawyers who have problems with alcohol addiction. (9/5/14 105,106)
32. Petitioner cooperated fully with office of disciplinary counsel in its investigation and supplemented his reinstatement questionnaire on two occasions with tax information. (9/5/14 N.T. 109-111)
33. Petitioner owes taxes for the year 2005, which he has been contesting with the IRS. Petitioner is current in his taxes for all other years. (9/5/14 N.T. 112-115)
34. Petitioner has two collection lawsuits against him for matters he fell behind on while incarcerated. (Exh. P-5; 9/5/14 N.T. 120-125)
35. Petitioner attempted to get all those who owed money to him to pay, which he turned over to his family. He settled a bad faith case regarding his insurer and has a lawsuit against the Commonwealth related to a road defect and his bike accident, which is pending. (9/5/14 N.T. 116, 120-122, 123)
36. Petitioner has been sued for malpractice. He noted that the case is pending and he is vigorously defending. (9/5/14 N.T. 127-129,130)
37. Petitioner credibly testified that he is prepared to handle the stress of practicing law. He indicated that he never found law to be stressful and enjoyed his practice. No evidence was presented to raise doubts as to petitioner’s competency and ability to handle the rigors of law practice. (9/5/14 N.T. 132, 133)
*361 38. Petitioner has spent considerable time reflecting on his actions and accepts full responsibility for his misconduct, which caused the death of Anthony Severo, and expressed profound and genuine remorse for his misconduct. (9/5/14, N.T. 141, 142)
39. Petitioner noted several turning points during the course of coming to terms with his actions, including a moment he began believing in a higher power, reading about the accident and realizing he needed to go to jail, explaining his decision to his children and his realization that he needed to show how he has changed through his current acts. (9/5/14 N.T. 134-140, 194, 201)
40. Petitioner testified as follows:
“I try to show my remorse through the speaking that we all know about. I try to show my remorse as much as I possibly can because I’d like Anthony to be proud of the way I handled myself. I think about that a lot. So the things I tend to think about and that motivate me go well beyond practicing law and other things. These are things that, when you talk about, people get queasy. I understand that. If you want to know what’s in my heart, that’s what’s in my heart. I want to do good so bad and I want to help people. I do not want my story to become other people’s story. That’s what I tell them because sometimes people take it the wrong way.” (9/5/14 N.T. 199-200)
41. In his personal life, petitioner has become very active with the Catholic Church and has made strides to repair fractured relationships with his four children, three of whom are adults and one still a teenager. (9/5/14 N.T. 9-12, 140, 141)
*362 42. Petitioner introduced the testimony of 13 witnesses, which included Rebecca Hall, his wife; Frank Smolinsky, his parole agent; Sandra Lacovino, a volunteer for MADD; Martin Nothstein, an Olympic gold medalist bike racer; six attorneys from the Lehigh Valley area, including his current supervisor, Victor Cavacini, Esquire; Cari Doughty, a parole officer; and two individuals who attend AA with petitioner. (See 7/9/14 Notes of Testimony)
43. These witnesses credibly testified to petitioner’s remorse for his actions and the fact that he has taken full responsibility. The attorney witnesses testified to petitioner’s excellent work product and his diligence in handling his tasks. These witnesses overwhelmingly credibly testified to petitioner’s excellent reputation in the community and fully support petitioner’s reinstatement to the bar. {See 779/14 Notes of Testimony)
44. If reinstated, petitioner intends to practice law with his current employer, Gross McGinley, LLP in the areas of personal injury and insurance litigation.
45. Office of Disciplinary Counsel does not oppose reinstatement.
III. CONCLUSIONS OF LAW
1. The misconduct for which petitioner was disbarred is not so egregious as to preclude reinstatement. Office of Disciplinary Counsel v. Keller, 506 A.2d 872 (Pa. 1986)
2. Petitioner has demonstrated by clear and convincing evidence that a sufficient period of time has passed since the misconduct. In re Verlin, 731 A.2d 600 (Pa. 1999)
3. Petitioner has demonstrated by clear and convincing evidence that he possesses the moral qualifications, *363 competency and learning in the law required to practice law in Pennsylvania, and his resumption of the practice of law within the Commonwealth will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest. Pa.R.D.E. 218(c)(3).
IV. DISCUSSION
Petitioner seeks reinstatement to the bar of the Supreme Court of Pennsylvania following his disbarment on consent by order of the Supreme Court of Pennsylvania dated November 30,2006.
Petitioner’s request for readmission is initially governed by the standard set forth by the Supreme Court of Pennsylvania in Office of Disciplinary Counsel v. Keller, 506 A.2d 872 (Pa. 1986). The Keller standard provides that when reinstatement is sought by a disbarred attorney, the threshold question must be whether the magnitude of the breach of trust would permit resumption of practice without a detriment effect upon the integrity and standing of the bar or the administration of justice nor be subversive of the public interest. This inquiry recognizes that some forms of misconduct are so egregious that they will bar the attorney from successfully gaining reinstatement. As a threshold matter, therefore, the Board must determine whether petitioner’s breach of trust was so egregious as to preclude his reinstatement. See In re Verlin, 731 A.2d 600 (Pa. 1999): Office of Disciplinary Counsel v. Costigan, 664 A.2d 518 (Pa. 1995).
We note from the outset that there is no exact case on point for the crimes for which petitioner pled guilty that resulted in the reinstatement of that attorney. However, many attorneys who have been disbarred for very serious *364 misconduct have been reinstated after meeting the Keller threshold.
There are numerous examples of cases where the threshold question has been met involving conversion of substantial client funds and other criminal conduct. See In re Greenberg, 749 A.2d 434 (Pa. 2000) (misappropriation of $2 million and commission of perjury in bankruptcy proceeding); In re Costigan, 664 A.2d 518 (Pa. 1995) (conviction for theft offenses); In re Perrone, 777 A.2d 413 (Pa. 2001) (filing false fee petitions with the court); Office of Disciplinary Counsel v. Milton Raiford, 50 DB 1994 (Pa. 2010) (criminal convictions for perpetrating fraud on the criminal justice system of Allegheny County). In the recent case of Office of Disciplinary Counsel v. Michael K. Simon, 149 DB 2005 (Pa. 2014), Mr. Simon converted and embezzled nearly half a million dollars of clients’ funds: His actions were not so egregious as to bar reinstatement.
The above cases are examples of serious and deplorable criminal acts by lawyers, all of whom were able to meet the threshold standard and achieve reinstatement. Although the instant matter regrettably involves the death of a young man caused by petitioner’s use of alcohol and reckless driving, these crimes do not have the intentional aspect which might weigh against reinstatement. The board concludes that petitioner’s acts were not so egregious as to prevent reinstatement.
A related question in reinstatement from disbarment matters is whether petitioner has met his burden of proving by clear and convincing evidence that his resumption of the practice of law will not have a detrimental impact of the integrity and standing of the bar, the administration of justice or the public interest. Office of Disciplinary Counsel *365 v. Keller, supra. The board must consider the quantity of time that has passed since petitioner was disbarred and his efforts at a qualitative rehabilitation, in order to determine whether the detrimental impact of the misconduct on the public trust has dissipated. In re Verlin, 731 A.2d 600 (Pa. 1999).
Petitioner was disbarred on consent on November 30, 2006. Petitioner has been removed from the practice of law for approximately seven and a half years as of the date of the reinstatement hearing. The only firm timetable set by the Supreme Court in reinstatement from disbarment matters is the five year waiting period after disbarment. Pa.R.D.E. 218(b). Whether sufficient time has passed must be determined by the unique circumstances of each case. The record in this case demonstrates that the period of disbarment has been qualitative and meaningful to petitioner’s rehabilitation and has dissipated the impact of the original misconduct on the public trust.
Petitioner has made substantial changes to his life, including serious alcohol rehabilitation which has helped him to abstain from alcohol and stay sober. Immediately following the tragic accident, he entered inpatient treatment, followed by a lengthy outpatient treatment. While incarcerated, he availed himself of alcohol programs provided by the institutions. Upon release, he began attending AA meetings, where he remains active. Not content to simply attend meetings, petitioner has demonstrated a desire to give back and to work with others who have alcohol problems. He has done that repeatedly through his assistance to the Lehigh County Probation Department and through MADD. He has given presentations at schools and other community events concerning the topic of alcoholism.
*366 Petitioner’sdisbarmenthasprovidedhimtheopportunity for reflection. He accepts complete responsibility for his misconduct and has expressed deep and genuine remorse. He carries the heavy weight of his knowledge that his actions caused the death of another person. He recognizes the need to make amends and has done so at every opportunity.
Petitioner’s character witnesses testified to his current excellent reputation in the community and had no hesitation in recommending his reinstatement to the practice of law. Attorneys who testified on his behalf lauded his legal skill and competence.
Petitioner has been employed as a legal assistant at the law firm of Gross McGlnley, LLP since July of 2012. He has been properly supervised and has not engaged in the unauthorized practice of law. Petitioner has maintained his knowledge in the law through his work as a legal assistant, his review of legal periodicals and newspapers, and the completion of his CLE credits. In addition to his legal employment, petitioner and his wife followed their shared passion for biking and opened a bike shop in the Allentown area.
The evidence of record demonstrates that petitioner’s seven and a half years of disbarment have been a time of genuine rehabilitation. See Office of Disciplinary Counsel v. Gerard Emmett Evans, 10 DB 2001 (Pa. 2008); Office of Disciplinary Counsel v. Mark Allen Kovler, 172 DB 2002 (Pa. 2009). Petitioner has met the requirements of Pa.R.D.E. 218(c)(3) by showing he is morally qualified, competent and learned in the law, and of equal importance, that his reinstatement will not be detrimental to the public or to the profession. For all of the above reasons, we *367 recommend that the petition for reinstatement be granted.
V. RECOMMENDATION
The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, Robert Eric Hall, be reinstated to the practice of law.
The Board further recommends that, pursuant to Rule 218(f), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.
ORDER
And now, this 17th day of March, 2015, upon consideration of the report and recommendations of the Disciplinary Board dated February 19, 2015, the petition for reinstatement is granted.
Petitioner is directed to pay the expenses incurred by the Board in the investigation and processing of the petition for reinstatement. Pa.R.D.E. 218(f).