# In the Matter of Steele

Disciplinary Board Docket no. 34 D.B. 1997.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SHEERER, *Member,* June 25, 2005—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

On September 26, 2003, petitioner, Charles Ellis Steele, filed a petition for reinstatement to the bar of the Supreme Court of Pennsylvania. Petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania dated October 28, 1998. This disbarment was made retroactive to April 12, 1997. On November 24, 2003, Office of Disciplinary Counsel filed a response to petition for reinstatement and took the position that insufficient time had passed since petitioner's disbarment to allow for reinstatement.

A reinstatement hearing was held on March 17, 2004, before Hearing Committee 4.15 comprised of Chair Ronald H. Heck, Esquire, and Members Joseph E. Altomare, Esquire and Carol S. Mills McCarthy, Esquire. Petitoner was represented by Robert H. Davis Jr., Esquire. Petitioner offered the testimony of 12 witnesses,

as well as his own, and provided letters of support and character confirmation.

Following the submission of briefs by the parties, the Hearing Committee filed a report on July 6, 2004, and recommended that petitioner be reinstated to the practice of law.

This matter was adjudicated by the Disciplinary Board at the meeting of September 27, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner was born in 1950 and was admitted to the practice of law in Pennsylvania in 1982. He resides at 6231 White Cloud Rd., Leechburg, PA 15238.

(2) On December 20, 1996, following a jury trial, petitioner was convicted of 11 counts of mail fraud for overcharging clients in the amount of $10,300. He was further convicted of four counts of obstruction of justice for allowing inaccurate records to be produced in response to a grand jury subpoena.

(3) On March 25, 1997, petitioner was sentenced to 33 months imprisonment for each of the counts, to be served concurrently, and three years supervised release at each count, to be served concurrently.

(4) Petitioner was ordered to make restitution in the total amount of $81,329.57. A lump sum of $40,000 was to be paid within 30 days of the date of the order. The remainder was to be paid in monthly installments of not less than $1,145 beginning 30 days after petitioner's release from incarceration.

(5) Petitioner served his incarceration and completed his supervised release on September 29, 2002. He has made consistent progress in making payments of the restitution imposed upon him by the court. As of the date of the hearing, petitioner still owed approximately $71,000.

(6) Upon his return from incarceration, petitioner sought out work and has supported his family and made restitution payments.

(7) Petitioner has been employed in a variety of positions, including legal clerkships, labor negotiator, writing and teaching, assembly line worker, educational and fundraising consultant and "headhunter." He applied for many kinds of jobs from fast food worker to census taker.

(8) Petitioner initiated contacts with Professor Robert Taylor of Duquesne University, who teaches ethics at that institution. Petitioner now gives presentations to professional responsibility classes at Duquesne and Widener University regarding his misconduct.

(9) Petitioner teaches college-level courses at Penn State University and the University of Phoenix. These courses include constitutional law, school law, organizational management and introduction to psychology.

(10) Petitioner has an ongoing business called Wingspan Consulting Group, which was formed in September 2002. This group designs and teaches courses to school districts related to the Health Insurance Portability and Accountability Act, sexual harassment, and the Family Educational Rights and Privacy Act.

(11) Petitioner is involved in various community activities, such as the local high school music activities and the firemen's association. His affiliation with these groups has included the handling of large sums of cash. Petitioner has also served on the local zoning board and his township's Long Range Planning and Recreation Committees.

(12) Twelve witnesses testified on behalf of petitioner. These witnesses were each leaders in their respective professions, businesses or the community. Among these witnesses were:

(a) Andrew Waszyn is a United States Probation Officer and supervised petitioner for three years upon his release from prison. Mr. Waszyn found petitioner to be very remorseful. Mr. Waszyn recommended that petitioner be released from probation despite the fact that petitioner was unable to pay full restitution at the time. Mr. Waszyn believes petitioner will continue to make payments and remain a law-abiding citizen.

(b) Michael Betts, Esquire, is an attorney who offered petitioner a paralegal position shortly after petitioner was released from prison. Mr. Betts found petitioner's legal work to be of the highest quality. Mr. Betts supports petitioner's re-admission and has talked to members of the community who feel the same.

(c) Professor Robert Taylor of Duquesne University has taught law for 25 years. Petitioner contacted him regarding talking to his professional responsibility classes about his conviction. Professor Taylor received permission from the law school for petitioner to address his

senior classes and stands behind petitioner in his rehabilitation efforts. Over the past four years, petitioner has spoken to approximately 800 law students about his experiences.

(d) Karen Gokay, Esquire, is the director of human resources for the Berks County Intermediate Unit in Reading, Pennsylvania. Ms. Gokay worked as an associate attorney for petitioner from 1993 until 1996 and testified on petitioner's behalf at his criminal trial. Ms. Gokay hired petitioner to perform non-legal consulting work after his release from prison. She recommended petitioner to her colleagues as a consultant with no reservations. Ms. Gokay knows many persons in Pennsylvania who know of petitioner and his conviction. All persons with whom she has spoken are very supportive of petitioner regaining his law license.

(e) Chester Kent, Esquire, is associate executive secretary of the Tri-State Area School Study Council at the University of Pittsburgh. He has known petitioner for many years and was a client of petitioner. He has talked to a large number of petitioner's former clients, school personnel and education lawyers about petitioner's desire to be reinstated as a lawyer. Mr. Kent did not encounter anyone who was opposed to petitioner's reinstatement.

(13) In addition to live witnesses, many character letters were submitted in support of petitioner's reinstatement.

(14) Petitioner testified on his own behalf.

(15) Petitioner expressed sincere remorse for his criminal misconduct.

(16) Petitioner's imprisonment was a very humbling and difficult experience for him. His mother died while he was incarcerated and this event caused him substantial personal pain.

(17) During his imprisonment, petitioner's wife, who suffers from Crohn's Disease, was forced to return to work as a teacher, after 14 years as a stay-at-home mother to three children.

(18) Petitioner's family struggled financially, as well as emotionally, during this time. Petitioner's oldest son, who was a teenager, developed depression and rebelled against his mother.

(19) Petitioner was diagnosed with prostate cancer in 2002 and has been dealing with that disease.

(20) Petitioner currently owes approximately $71,000 in restitution, has unpaid debts, a child in college and no steady stream of income, despite the different jobs he holds.

(21) Petitioner does not yet earn a substantial income from Wingspan Consulting Group, although he works many hours preparing materials and marketing the products.

(22) Petitioner nevertheless intends to pay his restitution.

(23) Petitioner fulfilled his required Continuing Legal Education credits for reinstatement.

(24) Petitioner keeps apprised of the law by reviewing advance sheets and doing internet research. He re-

views a variety of legal cases in preparation for teaching his college courses.

(25) If reinstated, petitioner intends to practice education law in western Pennsylvania. He has already been approached by a school district to apply for the solicitor position. He may also consider practicing criminal law as a defense lawyer.

## III. CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of his petition for reinstatement.

(2) Petitioner has demonstrated by clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner has demonstrated that his resumption of the practice of law within the Commonwealth will be neither detrimental to the integrity and standing of the bar or administration of justice nor subversive of the public interest.

## IV. DISCUSSION

This matter comes before the Disciplinary Board on a petition for reinstatement filed by Charles Ellis Steele. Petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania dated October 28, 1998, and made retroactive to April 12, 1997. Petitioner bears the burden of proof by clear and convincing evidence

that he is qualified for re-admission. Pa.R.D.E. 218(c)(3)(i).

Petitioner's request for reinstatement following disbarment is initially governed by the standard set forth by the Supreme Court of Pennsylvania in *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). As a threshold matter, the board must determine whether petitioner has demonstrated that his breach of trust was not so egregious that it precludes him from reinstatement.

Petitioner was found guilty of 15 federal felony counts, 11 of which were mail fraud and four of which were obstruction of justice. The mail fraud counts involved inflating bills to 11 separate clients. These clients were school districts represented by petitioner. The obstruction of justice counts involved the submission of false documents to the U.S. Attorney's office for submission to a federal grand jury.

While very serious in nature, this misconduct is not so egregious as to preclude consideration of petitioner's request for reinstatement. *In re Perrone,* 565 Pa. 563, 777 A.2d 413 (2001) (Attorney Perrone's conviction of theft by deception, tampering with public records or information, securing execution of documents by deception, and unsworn falsification to authorities was not egregious enough to prohibit consideration of the reinstatement petition); *In re Verlin,* 557 Pa. 47, 731 A.2d 600 (1999) (Attorney Verlin's conviction of criminal conspiracy, perjury, false swearing, and theft by deception was not egregious enough to prohibit consideration of the reinstatement petition).

Having concluded that petitioner's misconduct is not so egregious as to preclude reinstatement, the board must now determine whether petitioner has met his burden of proving by clear and convincing evidence that his resumption of the practice of law at this time would not have a detrimental impact on the integrity and standing of the bar, the administration of justice or the public interest, and that he has the moral qualifications, competency and learning in the law required for admission to practice law in Pennsylvania. Pa.R.D.E. 218(c) (3)(i). In order to make this determination, the board must consider the amount of time that has passed since petitioner was disbarred, as well as his efforts at rehabilitation. *In re Verlin,* 557 Pa. 47, 731 A.2d 600 (1999).

Petitioner has been without a license to practice law for approximately seven and a half years. While this amount of time may appear on its face to be insufficient to dissipate the taint of petitioner's misconduct, a closer evaluation of petitioner's disbarment period suggests that it was a time of successful qualitative rehabilitation for petitioner.

Petitioner served his prison sentence, continuously paid restitution, worked diligently at obtaining employment in order to support his family and pay his obligations, established a business, developed a solid reputation in that business, did volunteer work for his community and maintained and expanded his legal knowledge. Petitioner has shown through these actions a genuine desire to right his wrongs and contribute in a positive way to society. Additionally, and importantly, petitioner expressed sincere remorse for his past actions.

He is not afraid to speak of his experience in the criminal system in order to help others avoid his mistakes. Petitioner voluntarily asked to give presentations to law school ethics classes in order for law students to benefit from his experiences.

Numerous witnesses, in addition to petitioner's statements, helped establish that he has accepted his wrongdoing and is remorseful. Many impressive witnesses support petitioner's reinstatement and have no reservations about his resumption of the practice of law in Pennsylvania.

Considering all of the above facts, the board is persuaded that petitioner has demonstrated that he has engaged in a qualitative period of rehabilitation during his disbarment. Petitioner has met his burden of proving that he has the moral qualifications, learning and competence to practice law and his resumption of the practice of law will not have a detrimental impact on the integrity and standing of the bar, the administration of justice or the public interest. The board recommends that the petition for reinstatement be granted.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that petitioner, Charles Ellis Steele, be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Members Teti, Saidis, Newman and Brown dissented and would recommend reinstatement be denied.

Board Member Nordenberg did not participate in the September 27, 2002 adjudication.

## DISSENTING OPINION

SAIDIS, *Member,* January 10, 2005—I would deny Mr. Steele's petition for reinstatement.

In *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 579, 506 A.2d 872, 875 (1986), the Supreme Court stated:

"The primary purpose of our system of lawyer discipline is to protect the public from unfit attorneys and to maintain the integrity of the legal system . . . ."

When reinstatement is sought by a disbarred attorney, the threshold question must be whether the magnitude of the breach of trust would permit the resumption of practice without a detrimental effect upon "the integrity and standing of the bar or the administration of justice, or subversive of the public interest." Pa.R.D.E. 218(c)(3)(i).

Mr. Steele's conduct is not so egregious as to prevent reinstatement in the future. The issue is whether sufficient time has passed since Mr. Steele's disbarment.

Mr. Steele's criminal conduct led to his conviction of 11 counts of mail fraud and four counts of obstruction of justice. He was sentenced to 33 months incarceration and

three years probation. Mr. Steele was ordered to make restitution of the $81,329.57. Mr. Steele failed to recognize his wrongdoing as evidenced by the memorandum opinion entered June 7, 1999, by Senior District Judge Cohill. Although given opportunity for input into a payment plan for the restitution order, Mr. Steele objected to the restitution plan's procedure by motion and by letter. Mr. Steele pursued an appeal and on December 12, 1997, his convictions were affirmed by the Third Circuit, rehearing was denied and his attempt to gain certiorari from the Supreme Court and the rehearing thereon were both denied.

Mr. Steele's mail fraud and obstruction of justice convictions involved public funds. The clients defrauded were school districts. The primary source of the funding for school districts is real estate taxes imposed upon each homeowner in the school district and funds received from the Commonwealth. The funds were meant to educate our young people. The victims of Mr. Steele's crimes (all the taxpayers of the school districts he defrauded) cannot be overlooked.

Although ordered to pay a total of $81,329.57 in restitution, including a lump sum payment of $40,000 by May 12, 1997, Mr. Steele did not comply with the order. The lump sum remains unpaid and $73,028 of restitution remains outstanding, with only $8,301 paid.

This case is compounded by Mr. Steele's high profile practice. He represented school districts around the Commonwealth (Erie, Harrisburg, Pittsburgh, Allentown and seemingly everywhere in between). His wrongdoing re-

ceived widespread media attention, calling into question lawyers' integrity throughout the Commonwealth.

As noted by the Supreme Court in *In re Verlin,* 557 Pa. 47, 731 A.2d 600 (1999), Verlin's disbarment for eight years is not an extremely lengthy period of time. Similarly, in *In re Greenberg,* 561 Pa. 154, 749 A.2d 434, 437 (2000), re-admission was denied after eight years. The court felt, based on the severity of Greenberg's misdeeds, reinstatement after eight years of disbarment reinforced the public's perception that lawyers are greedy and dishonest. The court concluded that reinstatement would tarnish the legal profession and weaken the public trust, especially given the deliberate misconduct.

The issue was succinctly stated by the court:

"The operative question is, if the public knew of petitioner's transgressions, would the fact that he was able to resume practicing law after a mere eight years of disbarment adversely affect the public's perception of the legal profession? We believe it would."

By comparison, in *In re Perrone,* 565 Pa. 563, 777 A.2d 413 (2001), criminal charges stemmed from Perrone's filing a false and misleading fee petition, which requested payment for legal services purportedly provided to indigent defendants in the City of Philadelphia. Perrone was charged with theft by deception, tampering with public records, securing execution of documents by deception and unsworn falsification to authorities. Perrone received concurrent criminal sentences of two years and five years probation. Perrone, at the time of his first request for reinstatement, had made complete restitution in the amount of $130,000. His actions were

committed deliberately and solely for his own personal profit. Mr. Perrone's initial petition for reinstatement was denied.[1]

"In light of the circumstances, it is clear that Perrone's dishonest actions have gravely damaged both the legal profession and the public trust in the legal system. Given the severity of Perrone's misdeeds, allowing him to be reinstated after less than eight years of disbarment would only reinforce the public's perception that lawyers are greedy and deceitful. . . . Therefore, as we believe that allowing Perrone to resume the practice of law, at the present time, would have a detrimental effect on the integrity and standing of the bar and on the administration of justice and would subvert the public interest, the petition for reinstatement is denied." *Id.,* 777 A.2d at 417. (footnote omitted)

The similarities between the Steele and Perrone cases are unmistakable. They involve deliberate misconduct committed solely for personal profit. The conduct involved the illegal payment of public funds to the lawyer. Both were ordered to pay restitution. At the time of his petition for reinstatement, Perrone had paid all restitution. Mr. Steele has made but a feeble effort. Mr. Perrone served probation and Mr. Steele's conduct resulted in incarceration for 33 months and three years probation.

Mr. Steele's conduct, while perhaps no more reprehensible than Perrone's, resulted in incarceration, it was

---

1. It should be noted that the Disciplinary Board at its September 27, 2004 meeting has recommended Mr. Perrone for reinstatement 11 years after disbarment.

well-publicized throughout the Commonwealth of Pennsylvania and a large, outstanding balance on the restitution order remains due to public school districts. If the public knew of Mr. Steele's transgressions and he was authorized to resume the practice of law after less than eight years, I am of the opinion that his reinstatement would adversely affect the public's perception of the legal profession.

Board Members Teti, Newman and Brown join in this dissent.

## ORDER

And now, June 24, 2005, a rule having been issued upon Charles Ellis Steele pursuant to Rule 218(c)(6), Pa.R.D.E., on March 24, 2005, to show cause why an order denying reinstatement should not be entered, upon consideration of the responses filed, the rule is discharged and the petition for reinstatement is hereby granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the Disciplinary Board in the investigation and processing of the petition for reinstatement.