910 A.2d 1

**In the Matter of John Anthony LORD.**

**Petition for Reinstatement.**

**Nos. 380 & 432, Disciplinary Docket No. 3—Supreme Court.**
**Nos. 149 DB 1995 & 48 DB 1998—Disciplinary Board.**

Supreme Court of Pennsylvania.

July 31, 2006.

*ORDER*

PER CURIAM.

AND NOW, this 31st day of July, 2006, upon consideration of the Report and Recommendations of the Disciplinary Board dated April 21, 2006, the Petition for Reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the Board in the investigation and processing of the Petition for Reinstatement.

## REPORT AND RECOMMENDATIONS OF THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA

TO THE HONORABLE CHIEF JUSTICE AND JUSTICES OF THE SUPREME COURT OF PENNSYLVANIA:

Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, The Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your Honorable Court with respect to the above—captioned Petition for Reinstatement.

## I. *HISTORY OF PROCEEDINGS*

On October 6, 2004, John Anthony Lord filed a Petition for Reinstatement to the bar of the Supreme Court of Pennsylvania. By Order of June 18, 1998, Petitioner was disbarred on consent. Previous to that order, Petitioner was suspended for one year and one day by Order of the Supreme Court dated December 30, 1997. Office of Disciplinary Counsel filed a Response to Petition for Reinstatement on January 31, 2005, stating its opposition to reinstatement due to insufficient time.

A reinstatement hearing was held on April 7, 2005, before a District I Hearing Committee comprised of Chair Harold M. Goldner, Esquire, and Members Heather Gallagher Tucker, Esquire, and Arthur S. Novello, Esquire. Petitioner was represented by John Rogers Carroll, Esquire.

Following the submission of briefs by the parties, the Hearing Committee filed a Report on October 6, 2005, and a majority of the Committee recommended that the Petition for Reinstatement be denied. There was one dissent but no opinion was filed regarding the reasons for the dissent.

Petitioner filed a Brief on Exceptions and request for oral argument on October 31, 2005.

Office of Disciplinary Counsel filed a Brief Opposing Exceptions on November 21, 2005.

Oral argument was held on January 20, 2006, before a three member panel of the Disciplinary Board chaired by Marc S. Raspanti, Esquire, with Senior Board Member Louis N. Teti, Esquire, and lay Board member Robert L. Storey.

This matter was adjudicated by the Disciplinary Board at the meeting on February 1, 2006.

## II. *FINDINGS OF FACT*

The Board makes the following findings of fact:

1. Petitioner is John Anthony Lord. He was born in 1946 and was admitted to practice law in Pennsylvania in 1972. His address is 105 Aberdeen Terrace, St. Davids PA 19087. His current business address is 1650 Market Street, 34th Floor, Philadelphia PA 19103.

2. During a period ending on June 30, 1992, Petitioner was a full partner in the law firm of White and Williams.

3. As a partner in the firm, Petitioner was responsible for maintaining records of the time he spent on client matters for billing purposes, submitting those records for preparation of Detailed Billing Records (DBRs), reviewing DBRs in matters in which he was lead counsel to make corrections and/or additions to be included in bills, and reviewing the bills which were prepared prior to their transmission to clients.

4. From January 1991 through May 1992, Petitioner engaged in a pattern of conduct whereby he caused expenses and fees for services to be charged to clients, which funds and time were not utilized for client benefit, resulting in overbillings, estimated at $18,338, and unsubstantiated billings of $30,477.

5. On various occasions, Petitioner purchased airline tickets, for which he billed the firm, which passed on the expense to clients, but which were used for Petitioner's personal travel, for a total in excess of $9,000.

6. In June 1992, Petitioner reimbursed $9,165 to the law firm for the personal travel expenses. The law firm resolved any client related issues due to Mr. Lord's conduct.

7. As a result of the discovery of these events, Petitioner was asked to leave the law firm, which he did effective June 30, 1992.

8. Following his resignation at White and Williams, Petitioner either shared office space with several attorneys or worked for attorneys. In 1995 or 1996, Petitioner was of counsel to a law firm in Philadelphia and was employed there until he was suspended by the Supreme Court.

9. Petitioner was suspended for a period of one year and one day by Order of the Supreme Court of Pennsylvania dated December 30, 1997, effective January 29, 1998.

10. After the effective date of his state court suspension, Petitioner failed to notify promptly all of his clients and opposing counsel of the fact of the suspension, filed with the Disciplinary Board a false certification of compliance with Rule 217, Pa.R.D.E., failed to file promptly substitution of his appearance and to make his files available to successor counsel, and continued to engage in the practice of law.

11. In the case of *Petrolino v. Groff and Martin Storage Co. et. al*, Petitioner did not withdraw as counsel, appeared for hearings in February and April 1998, failed to properly file a pleading, and in April 1998, misrepresented to the court that he was not the John Lord who was subject to the suspension order. He made misrepresentations to his law firm about the fact and circumstances of the court appearance.

12. In the *Estates if Raymond F. Shoemaker, Incapacitated Person, and later Decedent* and *Howard F. Shoemaker, Incapacitated Person*, in which Petitioner represented the guardian, Robert S. Rhode, Petitioner failed to timely file Status Reports, Inventory and Accounts as ordered by the court, failed to withdraw upon being suspended, failed to advise his clients and opposing counsel of his suspension, and continued to hold himself out as an attorney and file nonconforming Accounts through April 1998,

13. By letter dated May 8, 1998, Office of Disciplinary Counsel notified Petitioner of its concerns relating to the matters in 10—12, supra.

14. Petitioner was sued in legal malpractice by Mr. Rhode and the case settled in August 2000.

15. Petitioner was reciprocally suspended by the United States District Court for the Eastern District of Pennsylvania by Order dated June 8, 1998.

16. By Order dated June 18, 1998, the Supreme Court disbarred Petitioner on consent, based upon his voluntary resignation statement, in which he admitted that he was guilty of the allegations as set forth above.

17. During 1997 and 1998, after his suspension and disbarment, Petitioner drank alcohol continuously, in response to anxiety about supporting his family and his feelings of disgrace and shame over what had occurred.

18. Subsequent to his disbarment, Petitioner obtained employment with Dean Witter Reynolds as a broker. In October 1998, Petitioner executed a New York Stock Exchange Form U-4 in connection with his application for employment with Dean Witter Reynolds, Inc., in which he falsely denied that his license to practice law had ever been revoked or suspended.

19. Dean Witter discovered that Petitioner failed to disclose his professional discipline, and as a result terminated Petitioner's employment in March 1999.

20. Petitioner then joined the investment firm of Tucker Anthony Incorporated as a recruiter. The U-4 form disclosed Petitioner's suspension and disbarment. He worked there from April 1999 until December 1999.

21. As a result of Petitioner's failure to disclose his professional discipline in the Dean Witter Reynolds situation, the Stock Exchange notified Petitioner in September 1999 of an investigation of his qualifications to act as a registered representative.

22. In December 1999, Petitioner was terminated from Tucker Anthony and withdrew his application for registration to the New York Stock Exchange.

23. By Stipulation and Consent with the Exchange dated June 12, 2001, Petitioner consented to findings that he had violated Exchange Rules by his false statements on the U-4 and to the imposition of a penalty of censure and a bar for two years from membership or employment in any member organization.

24. Those findings were incorporated in an Exchange Hearing Panel Decision dated July 31, 2001.

25. Petitioner was employed from February 2000 to March 2002 as an operations manager at Power Modules, Inc. After being laid off from that job, Petitioner worked part-time as Executive Director for Philadelphia Sail until September 2002.

26. In September 2002 Petitioner accepted employment as a paralegal at Saltz Mongeluzzi, Barrett & Bendesky, where he is still an employee in good standing today.

27. Richard F. Limoges, M.D., is a psychiatrist in private practice, Board Certified in psychiatry, addiction psychiatry, addiction medicine, and forensic psychiatry.

28. Dr. Limoges diagnosed Petitioner as suffering from alcoholism and alcoholism related issues.

29. Dr. Limoges first saw Petitioner in July of 2003, approximately 15 months prior to Petitioner's filing of the within Petition for Reinstatement.

30. At that time, Dr. Limoges counseled Petitioner to attempt abstinence from alcohol. Petitioner has been alcohol-free since July 14, 2003.

31. Passing the first year or year and a half mark in sobriety is significant in Petitioner's recovery from alcoholism, according to Dr. Limoges, because continuous sobriety has allowed Petitioner to appreciate the impact of alcohol on his life, work and family.

32. Thomas J. Duffy, Esquire, is a Philadelphia lawyer who is well-acquainted with Petitioner. Mr. Duffy is a recovering alcoholic involved in AA and has discussed Petitioner's alcoholism and recovery with him. Mr. Duffy believes Petitioner is very serious about his recovery program.

33. Mr. Duffy acknowledged at the hearing that Petitioner has been sober for 21 months but described this as a quality time of recovery, as Petitioner has exhibited good sobriety and good honesty.

34. Roger Ham, Esquire is an attorney who is a practicing forensic economist. He is Petitioner's Alcoholics Anonymous sponsor and sees Petitioner once a week. He described Petitioner as functioning well on his own and pursuing the recovery program diligently and sincerely.

35. Michael Durst, Esquire is a Philadelphia lawyer who is a recovering alcoholic. He has known Petitioner since the mid–1980's. He has seen Petitioner at the Lawyers Recovery Group since 2003.

36. Mr. Durst has observed that Petitioner is dedicated to recovery and his reinstatement would not depreciate the reputation of the bar.

37. Robert J. Mongeluzzi, Esquire, is a partner at the law firm where Petitioner is currently employed as a paralegal. He testified that Petitioner has acknowledged that his past conduct was wrong and Petitioner is sorry and humiliated by his prior course of conduct.

38. Petitioner disclosed to Mr. Mongeluzzi about his alcoholism, as well as his previous employment issues.

39. Mr. Mongeluzzi described Petitioner as a terrific employee and a well-respected and cherished member of the law firm.

40. Mr. Mongeluzzi stated that he would stake his firm's reputation on Petitioner.

41. David L. Kwass, Esquire, is Petitioner's supervisor at the Saltz Mongeluzzi law firm. He opined that Petitioner has exhibited outstanding performance as a paralegal for the firm.

42.  Thomas Goutman, Esquire, is chairman of the litigation department at White & Williams and a former partner of Petitioner.  He described Petitioner as a competent lawyer whose readmission to the practice of law would not be detrimental to the reputation of the bar.

43.  Messrs. Mongeluzzi and Kwass likewise expressed their opinion that Petitioner's readmission to the bar would not be detrimental.

44.  Petitioner testified on his own behalf concerning his alcoholism and recovery.

45.  Petitioner is very serious about his recovery and recognizes that it is the key to his successful reinstatement.  He understands that his past actions destroyed his legal career and hurt the people in his law firm.  He nearly destroyed his marriage and his relationship with his children.

46.  Petitioner feels a certain sense of empowerment because he has control over his alcoholism and has a new life.

47.  Petitioner expressed sincere remorse for his misconduct and takes complete responsibility for his actions.

### III.  *CONCLUSIONS OF LAW*

1.  The misconduct for which Petitioner was disbarred is not so egregious as to preclude immediate consideration of his Petition for Reinstatement.

2.  Petitioner has demonstrated by clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

3.  Petitioner has demonstrated that his resumption of the practice of law within the Commonwealth will be neither detrimental to the integrity and standing of the bar or administration of justice nor subversive of the public interest.

### IV.  *DISCUSSION*

Petitioner's request for reinstatement to the bar following disbarment is initially governed by the standard set forth by

the Supreme Court of Pennsylvania in Office of Disciplinary *Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). The Keller opinion articulates a threshold question which must be addressed before the requirements of Pa.R.D.E. 218(c)(3)(i) are considered. This threshold inquiry is whether the magnitude of the breach of trust would permit the resumption of practice without a detrimental effect upon the integrity and standing of the bar or the administration of justice, nor be subversive of the public interest. Keller thus requires a determination that the original underlying misconduct is not so offensive as to preclude reinstatement.

In the instant matter Petitioner was suspended for one year and one day after he over billed clients and submitted false travel vouchers to his law firm. Pursuant to the Rules of Disciplinary Enforcement, Petitioner was required to notify clients and opposing counsel of his suspended status. He did not comply with the Rules. Petitioner continued to act as the attorney in three matters. He held himself out as an active attorney, pursued his cases and appeared at hearings. Petitioner's most egregious act concerned his misrepresentation to the court that he was not the John Lord who was suspended. When questioned by his employer, Petitioner lied about the matter. Following these actions, Petitioner accepted disbarment on consent. These acts, while regrettable, do not serve to impede Petitioner's request for reinstatement. It is evident from the case law on this issue that more egregious acts of misconduct have surpassed the *Keller* threshold question. *Matter of Greenberg,* 561 Pa. 154, 749 A.2d 434 (2000), *Office of Disciplinary Counsel v. Costigan,* 541 Pa. 459, 664 A.2d 518 (1995).

Having concluded that the nature of Petitioner's misconduct will not preclude reinstatement, the Board must now consider whether Petitioner has met his burden of proving by clear and convincing evidence that his resumption of the practice of law at this time would not have a detrimental impact on the integrity and standing of the bar, the administration of justice or the public interest, and that he has the moral qualifications, competency and learning in the law required for admission to

practice law in Pennsylvania. Pa.R.D.E. 218(c)(3)(i). In order to make this determination, the Board must consider the quantity of time that has passed since Petitioner was disbarred and his efforts at a qualitative rehabilitation. *In re Verlin*, 557 Pa. 47, 731 A.2d 600 (1999). The challenge presented to Petitioner is showing by clear evidence that sufficient time has passed to dissipate the detrimental impact of his misconduct on the public trust. *In re Perrone*, 565 Pa. 563, 777 A.2d 413 (2001).

Petitioner was disbarred on consent on June 18, 1998. At the time of the reinstatement hearing on April 7, 2005, Petitioner had been disbarred for nearly seven years. Following his disbarment, Petitioner obtained employment with Dean Witter Reynolds in October 1998, but failed to state on his application to become a registered representative with the Stock Exchange that his license to practice law had been revoked. Petitioner was terminated from Dean Witter. Subsequently he obtained employment at Tucker Anthony, another brokerage firm. He was candid and truthful on that application. Notwithstanding, he was terminated from that job in January 2000. Petitioner worked for two years as an operations manager at Power Modules in Norristown, Pennsylvania. His reason for leaving was due to a lay-off. From May through September 2002 Petitioner worked a part-time job as the Executive Director of City Sail. In September 2002 he accepted employment as a paralegal at the law firm of Saltz Mongeluzzi, Barrett & Bendesky in Philadelphia. Petitioner has described this job offer as a "godsend"; an opportunity to redeem himself in the legal field. Petitioner still maintains that job and by all accounts is a valued and productive employee of that firm.

Not surprisingly, in addition to his professional life, Petitioner's personal life experienced significant changes after his disbarment. Petitioner began attending Alcoholics Anonymous meetings and working with a qualified psychiatrist in July 2003. Petitioner's use and potential abuse of alcohol has been alluded to as early as his suspension proceedings in 1996, though it did not form the basis of his defense in that matter,

or in his disbarment on consent. Rather, as Petitioner has described it, he finally came to the realization that he could not control his drinking and had to remove it completely from his life.

Dr. Richard Limoges testified at the reinstatement hearing. He first saw Petitioner in July 2003. Dr. Limoges recommended that Petitioner test his relationship to alcohol and stop drinking for a period of time. A 90 day period of abstinence was agreed upon. Petitioner has continued to abstain since that time and has not had an alcoholic drink since July 14, 2003. It was in July 2003 that Petitioner began attending AA meetings and recognizing the dominant role that alcohol played in his life. Petitioner is a serious participant in AA meetings, attending two or three of them each week. Additionally, Petitioner attends weekly group therapy facilitated by Dr. Limoges for lawyers in recovery from alcoholism. Dr. Limoges indicated that passing the one year mark in sobriety is significant, and persons who have passed approximately the first year or year and a half have a very, very low rate of relapse. (N.T. 65). Dr. Limoges gave Petitioner an excellent prognosis based on his uninterrupted sobriety, his acceptance of his diagnosis, his motivation to succeed, the support of his family and friends, and his continued involvement with AA.

Petitioner's testimony on the subject of his alcoholism and recovery is illuminating. He went from being employed at a top Philadelphia law firm and being associated with a significant group of prominent litigators who drank and socialized regularly, to a person who ruined his career and felt lost, to a person who now seeks to regain control over his life. Petitioner is ashamed of his past misconduct and believes that he is not the same person he once was. Once he stopped drinking and got involved in AA, Petitioner had the ability to step back and see the interplay of the alcoholism and his conduct. He assured the Committee, and the Board, that these episodes would not be repeated in the future.

Petitioner's relationship with his family has changed for the better. He and his wife remain together after these myriad

difficulties, and Petitioner's relationship with his three adult children is better than he ever expected it would be. By all accounts Petitioner has achieved the measure of control he was seeking through the elimination of alcohol from his life and the revitalization of relationships with important people in his life.

Other witnesses provided additional evidence of Petitioner's recovery and rehabilitation. The unrebutted testimony of Thomas J. Duffy, Esquire, and Roger Ham, Esquire, as well as Michael Durst, Esquire, supports Petitioner's contention that he is dedicated to his recovery and is a changed person. The testimony of his employers is compelling as well, since they see Petitioner on a daily basis and are able to judge his demeanor and abilities.

This close scrutiny of the details of Petitioner's professional endeavors and personal circumstances after his disbarment is crucial in this case because two members of the Hearing Committee concluded that Petitioner only engaged in meaningful rehabilitation for a period of about a year and a half, i.e. the time frame of his sobriety at the time the hearing committee heard the case, and therefore an insufficient amount of time had elapsed to justify his reinstatement. The Committee cited to several recent reinstatement cases in support of its conclusion. After carefully reviewing these cases, the Board finds Petitioner's matter to be distinguishable on several significant points.

*In Matter of David J. Hirsch* 90 DB 1995, 74 RST 2002 ((Pa. June 29, 2004)), Mr. Hirsch was disbarred on consent in 1995 after he was convicted of racketeering and criminal forfeiture. He was incarcerated for 11 months, followed by two months in a halfway house and supervised release for three years. Mr. Hirsch presented evidence at his reinstatement hearing that he had a long history of alcoholism punctuated by an equally lengthy, 12 year history of sobriety attempts. Between 1991 and 2001 Mr. Hirsch made five attempts to achieve sobriety without relapse and was unable to do so. The only time he was able to stay sober for any length was during his incarceration and supervised release.

After that ended he could not stay sober. He relapsed in 2000; his involvement in a car accident with his daughter in the car prompted him to return to AA. At the time of the reinstatement he had been sober for two years. Dr. Limoges was the expert in Mr. Hirsch's case. He described Mr. Hirsch as emerging from denial in 2001 and finally having the ability to stay sober. Despite Dr. Limoges' testimony, the Board denied Mr. Hirsch's reinstatement based specifically on the context of Mr. Hirsch's history of alcoholism intertwined with relapses. The Board emphasized that Mr. Hirsch had stayed sober for more than two years in the past due to the definite limitations on his ability to consume alcohol while imprisoned or on supervised release, but had eventually relapsed even after such a period of time, so his ability to remain sober was uncertain and therefore a very critical issue. Petitioner Lord's situation is certainly different. He has no history of failed attempts at sobriety and he has not been in denial about his alcoholism since his acceptance of his disease in 2003.

In *Matter of Jeffrey Harris Frankel*, 576 Pa. 211, 839 A.2d 174 (2003), 576 Pa. 211, 839 A.2d 174 (2003), Mr. Frankel was disbarred on consent in 1996 after he converted $7,500 of client funds and used the monies to purchase drugs to support his growing addiction to prescription medication. Between 1996 and 2001, Mr. Frankel made numerous attempts to become sober by either self-treatment or participation in AA. These attempts were not successful. It was only after Mr. Frankel's relationship with his wife began to collapse that he entered an inpatient program in 2001. He stayed in the program for a total of 93 days. Three months later he filed his request for reinstatement, having been sober for six months. At the time of his hearing, he was sober for approximately 13 months. The Board commended Mr. Frankel for his efforts but denied the petition, as it was persuaded that 13 months was not a sufficient period of meaningful rehabilitation.

No one can determine with certainty, the year, month, day or hour Mr. Lord got the better of his chronic disease.

Notwithstanding when it occurred the Board believes, after a careful review of the record, that it has occurred. In the instant matter, Petitioner Lord has been sober since July 2003, which at the time of the filing of the reinstatement petition was 15 months and at the time of the hearing was 21 months. Obviously, more sober time has already occurred. Petitioner also has no history of failed attempts at sobriety, like Mr. Frankel, who initially attempted self-treatment instead of seeking professional treatment. Another critical piece of information is that Mr. Frankel's motivation for his misconduct was to support his drug addiction. It was the very reason why he converted client funds. It is not surprising that the Board demanded an extremely strong showing of sobriety and commitment from Mr. Frankel, as the threat of future harm was very real in his case.

Likewise, in the *Matter of Allan H. Freedman,* 573 Pa. 142, 821 A.2d 1247 (2003), 905 Disciplinary Docket No. 2 573 Pa. 142, 821 A.2d 1247 (2003), Mr. Freedman's misconduct was committed to support a drug habit. Mr. Freedman was disbarred on consent in 1992 after he pleaded guilty to one count of conspiracy to distribute cocaine and marijuana, one count of possession with intent to distribute marijuana, two counts of possession with intent to distribute cocaine, two counts of conducting financial transaction to conceal drug proceeds, one count of conducting financial transaction to promote drug dealing, and two counts of filing false tax returns. Mr. Freedman spent five years in prison and five years on supervised release. He ended his drug use and sought recovery in 1988, and at the time of reinstatement had been disbarred for nine years. The Board reinstated Mr. Freedman based on the positive evidence of his recovery. Mr. Freedman's crimes were egregious. Evidence of a lengthy rehabilitation was clearly important to demonstrate that Mr. Freedman's drug addiction was well in the past and such misconduct would not occur in the future.

While it is true that other reinstatement cases dealing with recovery from addiction involve longer periods of recovery time than that experienced by the instant Petitioner, the only

firm time table that has been set by the Supreme Court in reinstatement matters is the five year waiting period after disbarment. Petitioner has not practiced law for almost eight years. There is no mandatory time that a recovering petitioner must endure in order to show rehabilitation. Whether sufficient time has passed must be determined on the unique circumstances of each particular case. The record in this case demonstrates that since 1998 Petitioner has struggled with and eventually dealt effectively with his alcoholism. During this time, and particularly since July 2003, Petitioner has engaged in a qualitative and meaningful rehabilitation. The evidence of success in recovery from his treating physician, his family, his employer, his AA sponsor and other prominent members of the bar, some of whom broke anonymity to testify, provides reliable assurance of his rehabilitation. The Board is of the opinion that the Petitioner's over 21 months of sobriety is sufficient time to show a meaningful rehabilitation and dissipate the impact of the original misconduct on the public trust.

Petitioner bears the burden of proving that he has the moral qualifications, competency and learning in the law required for admission to the bar. Pa.R.D.E. 218(c)(3)(i). Petitioner introduced character testimony to support his qualifications for readmission. Robert Mongeluzzi, Petitioner's employer, stated his opinion that Petitioner is a very good employee and the quality of his work is exceptional. Mr. Mongeluzzi expressed his belief that readmission of Petitioner is appropriate, and further stated that y(3)6D "I put our reputation on the line for John Lord. I would stake our firm's reputation." David Kwass is a partner at Saltz Mongeluzzi and has been Petitioner's direct supervisor since 2002. He also expressed his belief that Petitioner's work is outstanding and that he would be an asset to the bar if allowed to practice.

The testimony of Thomas Goutman is persuasive. Mr. Goutman is the chairman of the litigation department at White and Williams and was employed at that firm during the time that Petitioner worked there and committed his misconduct.

While he admits that there was a certain cooling off period in his relationship with Petitioner after the misconduct, he and Petitioner have begun socializing again. He supports Petitioner's reinstatement and does not believe it would be in any way detrimental to the bar. The strength and quality of the character evidence is impressive and serves to underscore Petitioner's qualifications for reinstatement.

Petitioner has fulfilled his required credits for Continuing Legal Education and kept current on the state of the law through his employment as a paralegal, which entails research and working knowledge of the law. If reinstated, Petitioner plans to practice in Philadelphia. Petitioner's testimony and answers to the Reinstatement Questionnaire show that he realizes that the only way to practice law is with complete honesty and compliance with the law. He understands that eliminating alcohol as a factor in his life is crucial to his successful reinstatement. Petitioner's testimony is credible. He has expressed sincere remorse and made sincere efforts to regain the trust of the legal community. The Board is persuaded that he has met his burden to show that he is qualified to practice law in the Commonwealth. For these reasons the Board recommends that the Petition for Reinstatement be granted.

## V. *RECOMMENDATION*

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that Petitioner, John Anthony Lord, be reinstated to the practice of law.

The Board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., Petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the Petition for Reinstatement.

Respectfully submitted,

THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA

By: _____

Marc S. Raspanti, Board Member